Charles C. DeMartino (CD7413)
LEDY-GURREN, BASS, D'AVANZO & SIFF, LLP
7-11 South Broadway, Suite 208
White Plains, NY 10601
Tel: (914) 205-3884
Fax: (914) 205-3885
*Attorneys for Defendants Capital Alliance Group
and Narin Charanvattanakit*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIDTOWN VALUATION, INC. d/b/a EAST COAST APPRAISAL SERVICE, a New York corporation, individually and as the<br><br>Plaintiff,<br><br>vs.<br><br>CAPITAL ALLIANCE GROUP, NARIN CHARANVATTANAKIT, and JOHN DOES 1-10,<br><br>Defendants. | CIVIL ACTION NO.:<br>1:14-CV-01586-FB-CLP |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

PAGE

I. Introduction……………………………………………………………………………1

II. Statement of Facts……………………………………………………………….…..3

    A. Capital Alliance Is A Broker That Puts Investors Looking To Lend Money Together With Clients Who Need To Borrow Money……………………………3

    B. Plaintiff's Statement Of Facts Does Not Show That Capital Alliance Hid Its Identity Or That The Faxes Received By Plaintiff Bear Any Connection To Absolute Fax…………………………………………………………………………3

III. Argument……………………………………………………………………………...4

    A. Plaintiff Does Not Have a Colorable Claim That the Defendants Violated the TCPA………………………………………………………………..5

    B. Plaintiff Fails to Satisfy the Four Prerequisites of Rule 23(a)……………………6

        1. Numerosity………..……………………….……………………………7

        2. Commonality………..……………………………………………………….9

        3. Typicality……………..…………………………………………………...9

        4. Adequacy…………...……………………………………………………….10

    C. The Class Is Not Readily Ascertainable……………………………………………11

IV. The Class Fails to Satisfy the Requirements of Rule 23(b)………………………….11

V. Conclusion………………………………………………………………………….....12

# **TABLE OF AUTHORITIES**

<u>CASES</u>  <u>PAGE</u>

*Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007)……………………………………….………………..7

*Cortigiano v. Oceanview Manor Home For Adults*,
  227 F.R.D. 194, 207 (E.D.N.Y. 2005)……………..………….………….………..11

*Flores v. Anjost Corp.*,
  284 F.R.D. 112 (S.D.N.Y. 2012)………………………………………….….……..8

*In re Hydrogen Peroxide Antitrust Litigation*,
  552 F.3d 305 (3d Cir. 2008)……………………………………………………..7

*Kowalski v. YellowPages.com, LLC*,
  No. 10 CIV. 7318 PGG, 2012 WL 1097350 (S.D.N.Y. Mar. 31, 2012)………….…..……….9

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir.2010)……………..…………………………………………7

*NAACP v. North Hudson Regional Fire & Rescue*,
  255 F.R.D. 374 (D.N.J. 2009)……………………………………….……7

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)……………………………………….……9

*Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*,
  298 F.R.D. 54 (E.D.N.Y. 2014)………………………………….………………..*passim*

*Vengurlekar v. Silverline Technologies, Ltd.*,
  220 F.R.D. 222 (S.D.N.Y. 2003)……………………………………..………………10

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541,   180 L. Ed. 2d 374 (2011)………………………….………….9

<u>STATUTES</u>

47 U.S.C. § 227……………………………………………………………………………….4

F.R.C.P. Rule 23………………………………………………………….……*passim*

00034547.4

ii

# I. INTRODUCTION

Defendants Capital Alliance Group ("Capital Alliance") and its principal, Narin Charanvattanakit ("Narin") (collectively "Capital Alliance" or "Defendants"), have been sued by one (1) plaintiff, Midtown Valuation, Inc., d/b/a East Coast Appraisal ("Midtown"), for alleged violations of the Telephone Consumer Protection Act ("TCPA") and New York's General Business Law ("GBL").[1] Plaintiff's Motion does not even come close to a threshold showing of class eligibility.[2]

> Plaintiff alleges that:
>
> Plaintiff, Midtown Valuation, Inc., d/b/a East Coast Appraisal ("Midtown"), "in its own right and on behalf of a Class of similarly situated individuals and/or small business entities, seeks to redress the injury caused by defendants' willful transmission of thousands of unsolicited facsimiles to small business owners advertising its services as a business loan broker in violation of the Telephone Consumer Protection Act ("TCPA") and New York's General Business Law ("GBL").  In doing so, defendant Capital Alliance Group ("Capital Alliance") and its principal, Narin Charanvattanakit ("Narin") (collectively "Capital Alliance" or "Defendants"), deceptively marketed Capital Alliance's services under a variety of different company names to make it appear that the facsimiles were being sent by different companies.   In fact, Capital Alliance was behind each and every fax."
>
> (Motion Papers, P. 1).

As will be discussed in detail below, the problem with Plaintiff's allegations (both supporting its motion for class certification and its claim for damages) is simply stated: Plaintiff relies on three (3) faxes it received in 2014, which faxes bear the name of entities other than the Defendants, and not only fails to come forward with even one other identifiable class member, but fails to link any of its "evidence" to even the most basic TCPA claim against Defendants. The

---

[1] Defendants do not specifically address Plaintiff's claims related to NY GBL §349 as the merits of those claims do not bear on the Court's determination of class certification. Defendants do not intend to waive, however, any defenses to such claims.

[2] Defendants note that Plaintiff commenced a virtually identical purported class action lawsuit on or about December 4, 2013 in this Court, styled *Midtown Valuation, Inc. d/b/a East Coast Appraisal Service v. Four Seasons Roofing, Inc., 2:13-cv-06808-ADS-WDW*. This matter was voluntarily dismissed by the Plaintiff on or about Decemeber 21, 2013. (DeMartino Decl., Ex. D).

00034547.4

Motion fails to put forth even a scintilla of credible evidence showing entitlement to class certification, but rather relies on Plaintiff's counsel's hearsay and conclusory statements.

Capital Alliance is a small business loan broker, providing services in the finance industry, including bringing together small businesses with lenders. Capital Alliance is a California corporation that has been in business since approximately 2009. Capital Alliance uses referrals of satisfied customers, direct mail, returning clients, and an internet presence to bring together lenders with small businesses in need of financing.

There is no support in the Motion for the alleged notion that anyone other than Midtown received a fax, or a phone call, from the Defendants in violation of the TCPA.  Indeed, the only thing linking the faxes allegedly received by Midtown to the Defendants is Plaintiff's counsel's declaration saying that it is so. (Cunningham Decl., ¶ 3). Inexplicably, Plaintiff did not submit its own declaration as to its receipt of the faxes.

Plaintiffs seek to certify the purported class based upon a labyrinth-like trail of breadcrumbs that allegedly lead from the three faxes allegedly received by Midtown to the Defendants – and then (remarkably) to 3,924 seemingly unrelated persons. Plaintiff makes no reasonable argument that its claims, and the claims of the proposed class, arise out of common nucleus of operative facts, that common questions of law predominate, or that Plaintiff is an adequate class representative.

For the reasons set forth herein, Defendants respectfully request the court deny Plaintiff's Motion.

## II. STATEMENT OF FACTS

A.  **Capital Alliance Is A Broker That Puts Investors Looking To Lend Money Together With Clients Who Need To Borrow Money**

Defendant Narin is the CEO of Capital Alliance. (Narin Depo at 14:8-9). Defendants do not, as misstated by the Plaintiff, provide "short-term business loans to small businesses." (Moving Papers, p. 3). Capital Alliance operates primarily as a broker and offers access to financial products, business loans, and does charity work. (Narin Depo at 13:17-23; 14:1-2). Capital Alliance puts investors looking to lend money together with clients who need to borrow money. (Narin Depo at 14:3-9).

B.  **Plaintiff's Statement Of Facts Does Not Show That Capital Alliance Hid Its Identity Or That The Faxes Received By Plaintiff Bear Any Connection To Absolute Fax**

Plaintiff Midtown attaches three (3) faxes that it claims it received from Capital Alliance. (Motion, page 5). However, Plaintiff admits that "Capital Alliance is not identified on the faxes received by Midtown...." (Motion, page 5).

Plaintiff alleges that Defendants "...sent faxes under aliases...to hide the fact that Capital Alliance is the entity sending the unsolicited facsimiles." (See, *Id*). Plaintiff also argues that, "Despite Capital Alliance's attempt to disguise its identity, the facsimiles can be unquestionably traced back to Capital Alliance." (Motion, pages 5-6). Plaintiff offers no support for these conclusions.

Capital Alliance does not do its own facsimile campaign. (Narin Depo at 69:14-17). After being solicited by Absolute Fax, Defendant Narin hired Absolute Fax to provide leads. (Narin Depo at 38:6-18). Absolute Fax was the only fax lead provider used by Capital Alliance and Capital Alliance did not review the faxes before they were sent. (Narin Depo 45:11-17; 46:2-4). Capital Alliance's only input to the content of the faxes was to provide Absolute Fax with a business profile and product list. (Narin Depo 46:5-8). Capital Alliance did not direct Absolute

Fax not to put Capital Alliance's name on any faxes. (Narin Depo 469-11). Finally, Capital Alliance went so far as to confirm with Absolute Fax that they comply with applicable laws. (Narin Depo at 43:13-25).

Plaintiff's facts do no show that Capital Alliance hid its identity or that either Absolute Fax, or the Defendants, sent the faxes Midtown allegedly received. Plaintiff's motion utilizes smoke and mirror tactics to feign class entitlement by misstating testimony and throwing large purported class numbers at the Court with no foundation or link to the allegations against the Defendants. Indeed, Plaintiff's attempt to "determine the origin of the facsimiles received by Midtown" fails at every turn. (Motion, page 6).

## III.   ARGUMENT

**A.   Plaintiff Does Not Have a Colorable Claim That the Defendants Violated the TCPA**

Plaintiff cannot justify class certification because it cannot even put forth a colorable claim for relief on its own behalf. Midtown speaks in very broad strokes about how Defendants have violated the TCPA by "sending" unsolicited faxes, but never attempts to analyze the allegations in light of the wording of the statute. If they had, they might have thought twice about seeking class certification or commencing this lawsuit at all. The TCPA states, in relevant part, that,

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement…   (47 U.S.C. § 227(b)(1)(c)).

Plaintiff offers its counsel's specious sleuthing as the only support of a colorable claim.

The problem is that the tracing-back of the phone numbers done by Plaintiff does nothing to evidence a link between the parties. Here's why…

First, Plaintiff researched the two "800" phone numbers on the faxes it received. Plaintiff found that those numbers are owned by Phone.com, not the Defendants.[3] Plaintiff then states that 10,272 calls were made *to* one of the 800 numbers not owned by the Defendants between December 2013 and October 2014 and 12,992 calls were placed *to* the other 800 number not owned by the Defendants between February 2014 and October 2014. (*See*, Moving Papers, p. 6).

Next, Plaintiff explains that of the 23,264 calls placed *to* the two 800 numbers, 3,924 of those calls were forwarded *to* two other numbers (the "Forwarded Numbers" as defined by Plaintiff). (*Id.* at p. 6-7).

The last piece of the puzzle, according to Plaintiff, is confirmation of ownership of the Forwarded Numbers. Plaintiff "investigated" such ownership, and found that the Forwarded Numbers "were controlled by Ring Central, Inc." and that "the Forwarded Numbers were registered to Capital Alliance during the Class period." (*Id.* at p. 7). Most telling, however, is that Plaintiff does not attach the actual subpoena response from Ring Central, but rather relies solely on counsel's Declaration, which is purely inadmissible hearsay.[4] (Moving Papers, Cunningham Decl., ¶ 11). The Ring Central response is five (5) pages long and appears to just be a printout of the account information for a "Capital Alliance". (DeMartino Decl., Ex. B). It's no wonder the Plaintiff did not refer to this response in detail – there is nothing on it that links the Defendants to the Forwarded Numbers. (*Id.*). Among other things, Midtown subpoenaed records, in general, for

---

[3] Defendants do not waive any objection to the "findings" of ownership or other aspects of the traceability tree that Plaintiff puts forth in its motion papers.

[4] Additionally, the subpoena to Ring Central happens, the response to which is described as the lynchpin of Plaintiff's linking of the faxes to Defendants, is the one subpoena for which Defendants were not provided proper Notice of. Defendants' counsel only received a copy of the subpoena (DeMartino Decl., Ex. A), not the Notice, via email on 2/26/15 after requesting a copy of the subpoena and notice for counsel's file.

00034547.4

"Capital Alliance Group" and "Narin Charanvattanakit" and got this account profile. (DeMartino Decl., Ex A, ¶ 3). Not only is there absolutely no mention of the Forwarded Numbers, but Ring Central's response does not indicate any calls made from the Forwarded numbers to the Plaintiff or any purported class members. (DeMartino Decl., Ex. B). Plaintiff also offers no statement in the form of an affidavit or declaration from Ring Central as to what their subpoena response represents.

Importantly, Plaintiff has also failed to show that the specific faxes it received link back to the Defendants. They have only traced ownership of phone numbers, and of their own admission, state that only a portion of the calls to the 800 numbers were forwarded to Capital Alliance. So, even if Plaintiff could show that Defendants were linked to the Forwarded Numbers, they have NOT demonstrated that the faxes it received are linked to Capital Alliance.

Not only has Plaintiff failed to show a link between the Forwarded Numbers and the Defendants, but, more importantly and irrespective of the lack of a link, Plaintiff has only put forth information related to calls allegedly made *to* Capital Alliance. The Plaintiff has stood its TCPA claim on its head. It is axiomatic that Plaintiff has no standing, or legal cause, to sue Defendants, or seek certification of a class of persons *who made phone calls to* Capital Alliance. In sum, Plaintiff has not come forward with any evidence that Defendants sent even one facsimile to the Plaintiff, or anyone else.

**B.      Plaintiff Fails to Satisfy the Four Prerequisites of Rule 23(a)**

"To qualify for class certification, the Plaintiff must first prove that the putative class meets the four threshold requirements of Rule 23(a). These requirements are as follows:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

*Spread Enterprises, Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 66-67 (E.D.N.Y. 2014); Fed.R.Civ.P. 23(a)(1)-(4).

Because the decision to certify a class requires factual determinations that each requirement of Rule 23 has been met, a mere threshold showing by a party is insufficient to merit class certification. *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 316-17 (3d Cir. 2008); *NAACP v. North Hudson Regional Fire & Rescue*, 255 F.R.D. 374, 380-81 (D.N.J. 2009). Plaintiffs' motion does not even come close to a threshold showing of class eligibility.

"Before certifying a putative class, the Court must determine (1) whether the class meets the four Rule 23(a) requirements of numerosity, commonality, typicality and adequacy; and if so, (2) whether the class satisfies one of the three categories listed in Rule 23(b). *Spread Enterprises, Inc.*, 298 F.R.D. at 66. Further, "'[t]he party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met.'" *Id.* at 66 (quoting, *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir.2010)). Midtown falls short of this standard for each requirement.

**1.    Numerosity**

The numerosity requirement of Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." F.R.C.P. Rule 23 (a)(1). To meet the numerosity requirement, the class representatives must demonstrate that it would be difficult or inconvenient to join all class members. *See, e.g.*, *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). "[W]hile 'evidence of exact size or identity of class members is not required,' a plaintiff cannot rely on 'pure speculation or bare allegations' in order to demonstrate numerosity. *Spread*

00034547.4

7

*Enterprises, Inc.*, 298 F.R.D. at 67 (quoting *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012)).

There is one (1) Plaintiff in this case and no additional identified class members. Indeed, Plaintiff's proposed class is defined as "All persons who, within four years before the filing of the initial Complaint, <u>received</u> at least once unsolicited facsimile…" and "All persons within in the State of New York who, within four years before the filing of the initial Complaint, <u>received</u> at least once unsolicited facsimile…." (DeMartino Decl., Ex. C, Complaint at ¶ 32)(emphasis added). Plaintiff has only identified one (1) entity who received a facsimile – itself. And, equally as important, Plaintiff could not link the receipt of the faxes to Capital Alliance.

The other 3,924 purported class members represent individuals or entities that *placed phone calls* to the 800 numbers, not individuals or entities that received faxes. The Plaintiff cannot name, with competent evidence, anyone other than the Plaintiff in this purported class. There are no names, no addresses, no declarations, and no indication that anyone, except the Plaintiff, is committed to joining the proposed class. Instead, the Plaintiff's counsel, using less than competent evidence of questionable detecting and mathematics to locate phone records for thousands of calls, eventually concludes that the Defendants made no phone calls and sent no faxes.

Therefore, no reasonable inference of numerosity can be made from the evidence submitted by the Plaintiff.

### 2. Commonality

"To satisfy the commonality requirement of Rule 23(a)(2), there must be 'a showing that common issues of fact or law exist and that they affect all class members.'" *Spread Enterprises, Inc.*, 298 F.R.D. at 67 (quoting *Kowalski v. YellowPages.com, LLC*, No. 10 CIV. 7318 PGG, 2012 WL 1097350, at *13 (S.D.N.Y. Mar. 31, 2012)). Plaintiff raises several questions it considers "common" to the Class in order to support commonality. (Motion Papers, p. 12). However, "[w]hat really matters to class certification ... is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Spread Enterprises, Inc.*, 298 F.R.D. at 67 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)). Here, as there is not even a preliminary showing that Plaintiff received a fax from the Defendants, the discussion of common questions of law or fact does not get off the ground. Plaintiff cannot propose a Class, and claim that it shares common facts with the Class, when it is not part of the Class.

In support of the commonality requirement, Plaintiff makes conclusory statements such as, "Defendants *inundated* Class members with unsolicited faxes…." (Motion Papers, p. 12) (emphasis added). In actuality, Plaintiff is in possession of three (3) faxes that, by any reasonable interpretation of the evidence put forth by the Plaintiff, do NOT bear any link to the Defendants. Plaintiffs have not met the requirements for commonality.

### 3. Typicality

Typicality requires that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). "[T]his provision is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the

00034547.4

9

litigation. *Spread Enterprises, Inc.*, 298 F.R.D. 54, 68 (E.D.N.Y. 2014)(citing *Vengurlekar v. Silverline Technologies, Ltd.*, 220 F.R.D. 222, 227 (S.D.N.Y. 2003)).

It is apparent that if litigation were to proceed with Midtown, there would be much discovery devoted to the seemingly simple issue of whether or not Plaintiff received a fax from the Defendants. Plaintiff has already devoted much time and effort to this cause…to no avail. This issue alone would subject Plaintiff to a defense that would not be typical of the Class as defined.

Regarding facsimiles, Plaintiff contends its claims are typical of other class members because they arise from defendants' systematic violations of the TCPA.   First, the Plaintiff fails to submit credible evidence that connects the alleged "systematic" violations to defendants.   Rather, the Plaintiff relies upon thousands of phone records which do not demonstrate that Defendants sent one fax.   Defendants paid for marketing leads from a third party vendor, Absolutefax.com. Frankly, no evidence submitted by Plaintiffs establishes that the faxes received by the one Plaintiff, or other alleged class members, were from Absolutefax.com.

The Plaintiff's claims are not typical of the other class members because there is no evidence the other class members received faxes, or that those class members made calls to defendants in response to the alleged faxes.   Plaintiff has failed to meet the typicality requirement.

   4.   **Adequacy**

Adequacy requires the Plaintiff to "…show that the proposed action will fairly and adequately protect the interests of the class," *Spread Enterprises, Inc.*, 298 F.R.D. at 68 (quoting *Vengurlekar,* 220 F.R.D. at 227). "In order to satisfy Rule 23(a)(4), a 'plaintiff[ ] first must demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation.' Second, a plaintiff must 'show that [he has] no interests that are antagonistic to the proposed class members.'" *Id.* (quoting *Vengurlekar*, 220 F.R.D. at 227). Defendants cast no

00034547.4

dispersions on Plaintiff's counsel or their ability to represent any party in a class action lawsuit. However, Defendants would argue that they cannot represent a party who, itself, does not adequately represent the Class it has defined.

### C. The Class Is Not Readily Ascertainable

Using Plaintiff's argument and cited case law, ascertainability requires that the Class be defined so as to make it "administratively feasible for the court to determine whether a particular individual is a member." (Motion Papers, p. 17; *Cortigiano v. Oceanview Manor Home For Adults*, 227 F.R.D. 194, 207 (E.D.N.Y. 2005)). The Plaintiff has not demonstrated that this is an achievable task as the Plaintiff has not produced any credible evidence that it is a member of its own Class. Certainly, one can create a defined Class – *all females over the age 34*, for example. That is certainly a well-defined class that, for the most part, would be administratively feasible for the Court to populate with members. However, the Plaintiff has only succeeded here in showing that the path to evidencing ones' membership in the subject Class is an uphill one, at best, or non-existent in the case of the Plaintiff.

The subject Class is not readily ascertainable.

### IV. The Class Fails to Satisfy the Requirements of Rule 23(b)

As to Rule 23(b)(2), the Plaintiff argues that Defendants have acted in a manner applicable to the Class, thereby making injunctive relief appropriate. As has been argued above, the Plaintiff cannot even show that the Defendants have acted, in any manner, towards them. So, Plaintiff cannot argue that Defendants have acted in a similar fashion towards an unidentifiable Class.

Rule 23(b)(3), on which Plaintiff also relies, provides that a class may only be certified if "the question of law or fact common to the members of the class predominate over any question affecting individual members, and ... a class action is superior to other available methods for the

00034547.4

fair and efficient adjudication of the controversy."

As an initial matter, there is no Class. The one (1) Plaintiff, Midtown, has failed to show that anyone, including itself, has received a facsimile Capital Alliance and appears to rely most heavily of hearsay from Plaintiff's counsel to argue that there are 3,924 Class members. Without an ascertainable Class there can be no good faith representation that there are common issues of law or fact that predominate.

## V.     CONCLUSION

Based on the foregoing, Plaintiff has failed to meet any of the prerequisites to class certification and Defendants respectfully request that class certification be denied, together with any other relief that this Honorable Court deems just and appropriate.

DATED:   February 27, 2015                    LEDY-GURREN, BASS, D'AVANZO & SIFF, LLP

                                       BY:    /S/ Charles C. DeMartino
                                              Charles C. DeMartino, Esq. (CD7413)
                                              *Attorneys for Defendants Capital Alliance
                                              and Narin Charanvattanakit*
                                              7-11 South Broadway, Suite 208
                                              White Plains, NY 10601
                                              (914) 205-3884
                                              File No. 19.14432